**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DUANE EDWARDS,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    No. 06 C 4271 |
| | ) |
| **LEE RYKER,** | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Duane Edwards has brought a petition pursuant to 28 U.S.C. §
2254 for a writ of habeas corpus.  Edwards is currently in the
custody of the State of Illinois Department of Corrections,
incarcerated at the Lawrence Correctional Center.  For the reasons
stated herein, I deny his petition.

I.

In 2000, petitioner was convicted by a jury of home invasion,
unlawful restraint, one count of criminal sexual assault, and two
counts of aggravated criminal sexual assault.  The victim was
Dorothy Edwards, petitioner's wife.  The events underlying this
case occurred on May 3, 1999.  At the time, petitioner and his wife
were separated and Dorothy had a restraining order against
petitioner.  On that date, the parties had a court date in their
pending divorce case.

At trial, Dorothy was the State's main witness.  She testified
that on May 3 she was at home and on the telephone with her friend

Jerris Walker, as she prepared for work which she started at 2:45 p.m.  While still on the telephone she heard a noise and saw petitioner in the apartment.  She screamed for Walker to call the police and said "please don't hurt me."  Petitioner then "bear hugged" her, grabbed and tossed away the telephone, and put the point of a knife on her back.  Petitioner then made Dorothy call Walker back and say "everything is okay."  Dorothy complied and petitioner then forced her out to the car.

Once outside, Dorothy screamed for help and grabbed the knife from petitioner's hand and threw it across the street.  Petitioner still forced Dorothy into the car, where she said he hit her as they drove away and as she cried.  Petitioner told Dorothy they were both going to die that day.  A neighbor witnessed the struggle outside and called the police.

Petitioner drove the car to a field.  He told Dorothy to take out her dentures and remove her shoes which he then threw out the window.  Petitioner then unzipped his pants and ordered Dorothy to perform oral sex on him.  He forced her mouth onto his penis as she continued to cry.  When he stopped she tried looking around for help.  Petitioner then hit her again, because he thought she was trying to signal a nearby parked truck, and drove the car to a more desolate location.  Dorothy believed they drove about a mile and a half or two miles.  Petitioner stopped the car again and forced Dorothy to take off her clothes and have vaginal intercourse.

Petitioner did not take off his clothes.  After intercourse, petitioner drove the car to a park.

Dorothy next testified that at the park, petitioner carried her to a spot under a tree and put his suit jacket on the ground for her to sit on.  They talked about their situation and Dorothy told petitioner she was not going to tell anyone about what had happened that day.  Although there were people around she did not try to get help because she felt she had gained his confidence and did not want to upset him.  Dorothy estimated their conversation lasted for approximately 20 minutes, during which she told him that she loved him.

While at the park, Dorothy's face began to swell so they left to get ice.  Petitioner drove to a convenience store, which was two blocks from a police station, where he got out of the car to check for ice while Dorothy remained in the car.  There was no ice at that particular convenience store, so petitioner returned to the car and drove to a second convenience store, where he again exited the car and left Dorothy unaccompanied.  In both instances, Dorothy remained in the car and did not try to get help.  She testified she was afraid of angering him again and that he was watching her while inside.  At the second convenience store, petitioner returned to the car with ice and a soft drink for Dorothy.  She used the ice on her face and they returned to the park.  Afterwards, petitioner insisted on taking her home.

Once they returned to Dorothy's home, petitioner parked the car in front of the apartment and went inside with her. Once inside, Dorothy took some kind of anxiety medication. Dorothy testified that while they were inside the apartment her fiancé, Robert Walker, called, which angered petitioner. He took the telephone, spoke to the fiancé briefly and then hung up. Petitioner then said, "I don't care about your boyfriend as long as I'm able to fuck you" (Tr. at 184) and made Dorothy go upstairs to the bedroom. Dorothy started crying again. Once upstairs, petitioner forced Dorothy to undress and have sexual intercourse with him. That is when the police arrived.

The police initially rang the doorbell, but there was no response, so they began to pound on the door. This got petitioner's attention, so he peeked outside the window and saw police. He then told the victim to get dressed and answer the door and that he would hide in the basement. She got dressed, went downstairs and answered the door as petitioner hid in the basement.

Dorothy opened the door slightly, but did not say anything. Police officer Edward Johnson sensed something was amiss, however, and ordered her to step onto the porch. When she did so, petitioner came out of the basement and locked the door behind her. Officer Johnson asked Dorothy if petitioner was still inside. Dorothy nodded. More police arrived on the scene and were able to convince the defendant to turn himself in without further incident.

Dorothy then went to the hospital where she was examined. Swabs of fluid were taken from her mouth, vagina, and rectum. The lab results revealed the presence of semen on the vaginal and rectal swabs, but not on the oral swabs. Photographs of her face were also taken. The only injuries documented were the swelling on the sides of her face.

On cross examination, Dorothy testified that petitioner did not punch her at the time he forced her to perform oral sex. (Tr. at 208). The only injury she claimed to have received at that time was that her "heart was really broken." (Tr. at 207.) Dorothy added that "[h]e did punch me when we were parked on the side of the road because he thought I was signaling someone." (Tr. at 208.) When asked whether petitioner performed oral sex on her, Dorothy answered that she did not remember. (Tr. at 225.) Dorothy also testified that at the time they had intercourse in the car, he did not use any force other than putting his penis in her vagina. She added that he had also ripped her jewelry off, and that she was already afraid because "he had beat [her] halfway through the trip." (Tr. at 209.) When asked if petitioner used any force other than the actual penetration when they returned to the apartment, she again testified that he did not use additional force, but that "he had already beat [her] down." (Tr. at 211.)

Dorothy's neighbor, Gilbert Palmer, also testified at trial. He claimed to have seen petitioner "slam" Dorothy against the car

and strike her while inside the car before driving away. He called the police. On cross examination, Palmer was confronted with the police report in which he did not state that he observed petitioner strike Dorothy. Palmer responded the police must have omitted it. The State also called Walker, who corroborated that she heard Dorothy scream for help over the telephone when petitioner first entered Dorothy's apartment.

With regards to Dorothy's injuries, the State called a crime scene technician, who described the swelling on the sides of Dorothy's face, which she said was predominantly on the left side of her face. Suzanne Casseto, the staff nurse who attended to Dorothy at the emergency room, also testified she observed swelling on the left side of Dorothy's face, but no further injuries. Detective Les O'Connor also testified he observed a black eye on Dorothy. A DNA expert also testified that the DNA in the semen from the vaginal and anal swabs matched petitioner's.

The defense's only witness was Detective O'Connor. Detective O'Connor testified he interviewed Palmer and that Palmer did not tell him he observed petitioner strike Dorothy inside the car. (Tr. at 328-29.) The other evidence presented by the defense was that May 3, 1999 was a Monday.[1]

---

[1]The Illinois appellate court incorrectly stated "[t]he only evidence presented by defendant was the fact that the date of the incident was a Monday." In fact, the defense also called Officer O'Conner as a witness.

The jury found defendant guilty of home invasion, unlawful restraint, one count of criminal sexual assault (involving vaginal intercourse), and two counts of aggravated criminal sexual assault (involving vaginal intercourse). Petitioner was found not guilty of two additional counts of aggravated criminal sexual assault (involving oral penetration) and one count of criminal sexual assault (involving oral penetration). The trial court later merged all three sexual assault convictions into one count of aggravated criminal sexual assault, as these arose from the same act. The trial court sentenced petitioner to 20 years imprisonment for home invasion, 20 years imprisonment for aggravated criminal sexual assault, and 3 years imprisonment for unlawful restraint. The trial court ordered the two 20-year terms to run consecutively to each other and the 3-year term to run concurrently with the sentence for home invasion and consecutively to the sentence for aggravated criminal sexual assault. *People v. Edwards*, 3-00-0378 (Ill. App. 3d 2001).

Petitioner appealed, arguing (1) the evidence was insufficient to support his home invasion conviction; (2) the evidence was insufficient to prove any of the criminal sexual assault counts because the victim's testimony was unreliable; (3) his convictions for criminal sexual assault should be vacated because those counts were based upon the same conduct as the aggravated criminal sexual assault conviction for which he was sentenced; and (4) his

consecutive sentences violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The Illinois appellate court found in favor of petitioner on two of his claims. First, it found that there was insufficient evidence to sustain petitioner's home invasion conviction because petitioner had a property interest in the apartment at the time of the offense. Second, it found that petitioner's sexual assault convictions based upon the same conduct as the aggravated sexual assault count for which he was sentenced could not stand, vacating convictions on two counts. The Illinois appellate court denied the remainder of petitioner's claims.

Both petitioner and the state filed petitions for leave to appeal (PLA). Petitioner argued only that his consecutive sentences violated *Apprendi*. The state argued there was sufficient evidence for the home invasion conviction given that petitioner had no tenancy interest in the victim's apartment at the time of the offense. The Illinois Supreme Court denied both PLAs. Petitioner filed a motion for leave to file a motion for reconsideration of the denial of his PLA, which the Illinois Supreme Court denied on July 1, 2002.

In November 2002, petitioner filed a post-conviction petition in the state trial court. He argued: (1) the state failed to prove that petitioner inflicted bodily harm during his commission of sexual assault; (2) the trial court failed to properly instruct the

jury on a definition of bodily harm; (3) during closing argument, the prosecutor misstated the definition of reasonable doubt, improperly commented on the credibility of a witness, mischaracterized the victim's testimony, mischaracterized DNA evidence, and improperly introduced an aggravating sentencing factor during rebuttal; (4) petitioner's trial attorney was ineffective for not raising issues 1-3, not filing a post-trial motion preserving these grounds for appeal, not invoking petitioner's right to a speedy trial, and admitting to an essential element of the sexual assault counts; (5) the cumulative effect of grounds 1-4 rendered petitioner's trial unfair; and (6) appellate counsel was ineffective for not raising issues 1-5 on direct appeal. The Illinois appellate court dismissed the post-conviction petition as frivolous and without merit at the first stage of post-conviction review. In July 2003, petitioner filed a petition for relief from judgment under 735 ILCS 5/2-1401, arguing there was insufficient proof that he inflicted bodily harm during the commission of the sexual assault. The trial court dismissed the petition. Petitioner then appealed the dismissals of both his post-conviction petition and his 2-1401 petition. The state appellate court consolidated the appeals. *People v. Edwards*, 355 Ill.App.3d 1091, 1092, 825 N.E.2d 329, 331 (Ill. App. 3d 2005).

On appeal, petitioner argued (1) the evidence was insufficient to support the bodily harm element of the aggravated criminal sexual assault conviction; (2) the prosecutor made improper comments during closing argument; (3) his trial and appellate attorneys were ineffective; and (4) the trial court erred in treating the 2-1401 petition as a post-conviction petition and summarily dismissing it under the Post-Conviction Hearing Act. The Illinois appellate court affirmed both dismissals of petitioner's post-conviction petition and his 2-1401 petition. Specifically, the court found there was sufficient evidence that petitioner inflicted bodily harm during his commission of sexual assault, the prosecutor's closing argument that state witness Gilbert Palmer would not lie because he was a Baptist minister was invited by petitioner's closing argument; the prosecutor's closing remark that the jury should take a stand against "vicious criminals" did not render petitioner's trial fundamentally unfair when read in context; petitioner's claims that trial and appellate counsel were ineffective when they failed to argue the remoteness of the bodily injury and for failing to argue prosecutorial misconduct were contrary to the record and without merit. *Id.* at 1094-98, 825 N.E.2d at 332-35. With respect to the dismissal of the 2-1401 petition, the state appellate court reasoned that the trial court should not have summarily dismissed the petition and remanded for further proceedings. Both petitioner and the state filed PLAs.

Petitioner raised the same claims presented in his post-conviction appeal, and the state filed arguing that the trial court could summarily dismiss a 2-1401 petition. The Illinois Supreme Court denied the PLA on December 1, 2005.

In August 2006, petitioner filed the present petition pursuant to § 2254. He argues: (1) the evidence was insufficient to prove the bodily harm element of the aggravated criminal sexual assault count involving his vaginal penetration of the victim; (2) a double jeopardy violation occurred when the state appellate court looked to the bodily harm committed during the sexual assault involving oral penetration, of which petitioner was acquitted, when determining that the evidence was sufficient for the aggravated criminal sexual assault involving petitioner's vaginal penetration of the victim; (3) the trial court gave an erroneous jury instruction with respect to the definition of bodily harm; (4) during closing argument, the prosecutor: (a) gave an improper definition of reasonable doubt; (b) improperly vouched for the credibility of a witness; (c) misstated evidence; and (d) improperly referred to evidence not presented at trial; (5) petitioner's trial counsel was ineffective when he: (a) failed to object to the above listed errors; (b) failed to file a post-trial motion arguing the above asserted issues; (c) failed to request a speedy trial; and (d) admitted to an essential element of the aggravated sexual assault charge; (6) petitioner's appellate

counsel was ineffective for: (a) not arguing on appeal the above listed issues 1-4; (b) not arguing ineffective assistance of trial counsel as alleged in issue 5; (7) the cumulative effect of the errors in issues 1-5 rendered petitioner's trial fundamentally unfair; and (8) the trial court lacked jurisdiction when the officers had no jurisdiction to arrest petitioner.

## II.

The federal statute which governs petitions for writs of habeas corpus, 28 U.S.C. § 2254, provides a "highly deferential standard of review." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). This standard requires that I give state court decisions the benefit of the doubt, only intervening where a state court decision is "objectively unreasonable." *Woodford*, 537 U.S. at 24-27. Under the terms of § 2254, I may grant a petition for habeas corpus only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence" presented during the state court proceedings. 28 U.S.C. § 2254(d).

In addition to this deferential standard, I generally may only grant a petition for a writ of habeas corpus where "the applicant has exhausted the remedies available in the courts of the State"

and where the applicant has not procedurally defaulted his claims. 28 U.S.C. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).[2] These limitations are intended to allow state courts a fair opportunity to hear and act on a petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Procedural default may occur where the petitioner did not comply with state procedural requirements during his appeals in state court such that the state court found these failures to be an "independent and adequate" state law ground for denying his claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). When a state court relies on a state procedural ground to avoid reaching the merits of a petitioner's claim, that ground must be clearly and expressly relied upon and must be firmly established and regularly followed. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000).

To avoid procedural default, a petitioner must, at minimum, "invok[e] one complete round of the State's established appellate review process" for each of his claims. *O'Sullivan*, 526 U.S. at 845. In Illinois, this means one full round of appeals up to and including the filing of a petition for leave to appeal to the Illinois Supreme Court. *Id.* at 845-46; *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (requiring a claim to be raised

---

[2]Section 2254 also provides, however, that I may deny a writ of habeas corpus on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

through one full round of appeals, either on direct appeal of the petitioner's conviction or through post-conviction proceedings, to avoid procedural default).

## III.

### A. Claim 1

Petitioner argues the state failed to prove beyond a reasonable doubt the bodily harm element of his aggravated criminal sexual assault conviction. Petitioner was conviction of aggravated criminal sexual assault under 720 ILCS 5/12-14(a)(2)(1998), which provides: "The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during . . . the commission of the offense: . . . (2) the accused caused bodily harm . . . ." 720 ILCS 5/12-14(a)(2). As stated by the Illinois appellate court, "In order to sustain a conviction under section 12-14(a)(2), a defendant's acts causing bodily harm must be sufficiently close in time to the sexual acts in order for a court to find that they had been committed during the course of the assault." *People v. Edwards*, 355 Ill.App.3d at 1095, 825 N.E.2d at 333 (citing *People v. Colley*, 188 Ill.App.3d 817, 820, 544 N.E.2d 812, 814 (Ill. App. Ct. 1989)). Petitioner contends the infliction of bodily harm occurred before, not during, intercourse and that the Illinois appellate court looked to the wrong act of sexual

assault when determining that there was sufficient evidence of bodily harm.

Petitioner is correct that the Illinois appellate court appears to have referred to the wrong act of sexual assault when determining the sufficiency of the evidence. Specifically, the appellate court stated

> The defendant hit the victim several times in the car prior to the first sexual assault and then again right after he finished the first sexual assault. We therefore find that there was sufficient evidence in the record to prove that the bodily harm was contemporaneous to the criminal sexual assault.

*Id.* at 1095-96, 825 N.E.2d at 334. Although petitioner was found guilty of two counts of aggravated criminal sexual assault (involving vaginal penetration) he was acquitted of the charges alleging oral penetration, "the first sexual assault." Nevertheless, the state argues the appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

The Illinois appellate court acknowledged that petitioner's claim was a sufficiency challenge under the due process clause. *Id.* "A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision involv[ing] an unreasonable application of . . . clearly established Federal law." *Williams*, 529 U.S. at 407-08 (quotation marks omitted). "'Unreasonable' means something more than

mistaken, however." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003); *see also Williams*, 529 U.S. at 410 ("an unreasonable application of federal law is different from an incorrect application") (emphasis omitted). The Seventh Circuit explains that

> This [] is a demanding standard. For a petitioner to obtain relief on this ground, the state court must not only have reached an incorrect result, but a truly 'unreasonable' one. Thus, if the state court's decision is 'at least minimally consistent with the facts and circumstances of the case,' the federal court is powerless to grant relief.

*Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003) (quoting *Hennon v. Cooper*, 109 F.3d 330, 334-35 (7th Cir. 1997)).

Here, the State court's decision with respect to the sufficiency of the evidence is "minimally consistent with the facts and circumstances of the case." *See id.* A number of witnesses testified they observed a black eye or swelling on at least one side of Dorothy's face. Moreover, there was no evidence, physical or otherwise, contradicting Dorothy's testimony that petitioner struck her several times in the car; in particular, petitioner struck Dorothy just prior to driving approximately two miles to a more remote location where he forced her to have intercourse.

The issue, then, is whether the evidence of force is too remote to sustain petitioner's conviction. Under Illinois law, "What is significant is not the order in which the forced intercourse and assault occurred, but that [petitioner] sexually

16

assaulted the victim and the infliction of bodily injury occurred during or as part of the commission of that forcible rape." *People v. Lamon,* 346 Ill.App.3d 1082, 1091, 805 N.E.2d 271, 278 (2004). In this case, Dorothy's testimony that she was struck in the car just prior to being driven to a remote location where she was forced to engage in intercourse is sufficient to sustain the conviction for aggravated criminal sexual assault. Accordingly, the Illinois appellate court's ultimate decision is minimally consistent with the facts and not unreasonable under § 2254(d)(1).

Similarly, petitioner cannot establish the Illinois appellate court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings" under § 2254(d)(2). The Seventh Circuit has treated the reasonableness standards under § 2254(d)(1) and (2) as interchangeable. *See, e.g., Ward v. Sternes*, 334 F.3d 696, 703-05 (7th Cir. 2003) ("regardless if we classify [petitioner's] challenge as raising an issue of pure fact, pure law, or a mixed question of law and fact, we are required under the AEDPA to review the state court's adjudication on the merits of his claim deferentially and set the decision aside only if the court committed unreasonable error") *(*citation omitted*)*; *see also United States v. Wallace*, 458 F.3d 606, 610 (7th Cir. 2006). Because there are sufficient facts to sustain petitioner's conviction for aggravated criminal sexual assault, the Illinois appellate court's

ultimate decision is not unreasonable and petitioner's claim is denied.

## B. Claim 2

Petitioner argues that the state appellate court violated his right against double jeopardy because it considered the bodily harm associated with the first sexual assault in affirming the aggravated criminal sexual assault conviction. This claim was not raised through one full round of state court review and is defaulted. *Boerckel*, 526 U.S. at 845.

Moreover, this claim fails on the merits. The Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense . . . and then only when such occurs in successive proceedings." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis omitted) (internal citation omitted). "[W]here there is no threat of either multiple sentences or successive prosecutions, the Double Jeopardy Clause is not offended." *United States v. Wilson*, 420 U.S. 332, 344 (1975). Petitioner's point is well taken; the appellate court appears to have referred to the wrong charge in determining the sufficiency of his aggravated criminal sexual assault conviction. However, the appellate court's reference to the "first sexual assault" does not constitute "a successive prosecution" or "multiple punishments" as proscribed by the Double Jeopardy Clause. Accordingly, petitioner's double jeopardy claim fails.

## C.   Claim 3

Petitioner next challenges the trial court's jury instruction on the definition of "bodily harm."  During deliberations, the jury sent a question to the trial court asking: "[1] Please explain the Court's definition of bodily harm. [2] Does bodily harm have to be committed while the sexual act is taking place?"  The trial court provided the following answer: "[1] The term bodily harm means physical harm including but is not limited to sexually transmitted disease, pregnancy and impotence. [2] No, the bodily harm does not have to be committed while the sexual act is taking place.  But the bodily harm must be sufficiently close either before or after in time to the sexual act that they can be said to have been committed during the course of the sexual assault."  The definition of bodily harm provided in response to the jury's first question is contained in 720 ILCS 5/12-12(b).  Petitioner contends the definition given by the trial court differed from the definition used by the Illinois Supreme Court, and that sending a written instruction to the jury, as opposed to having it read aloud, was error.

Petitioner did not raise this claim through one full round of state court review.  This was initially presented in his post-conviction petition, but was not raised in his post-conviction appeal.  It was asserted again in his PLA.  However, petitioner must exhaust all levels of the state appellate review process. *Boerckel*, 526 U.S. at 845.  Accordingly, this claim is defaulted.

Petitioner attempts to establish cause by arguing he received ineffective assistance of post-conviction appellate counsel, which resulted in this claim's default. In the absence of a constitutional right to post-conviction appellate counsel, however, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman,* 501 U.S. at 752 (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)). Therefore, petitioner must "bear the risk of attorney error that results in a procedural default." *Id.* at 752-53.

## D. Claim 4

Petitioner also asserts a series of prosecutorial misconduct claims. Specifically, petitioner argues the prosecutors made improper statements during closing and rebuttal argument by (1) vouching for the credibility of Palmer, a State's witness, by stating he was a Baptist minister and would not lie; (2) referring to petitioner and others as "vicious criminals;" (3) providing an incorrect definition of reasonable doubt; (4) misstating the DNA expert's testimony; (5) misstating that petitioner may have had a gun. Of these claims, only (1) and (2) have been through one full round of review in the Illinois courts. Petitioner provides no explanation for why he did not raise the remaining claims in his post-conviction appeal and has not made a showing of actual

innocence.   Accordingly, petitioner's prosecutorial misconduct claims (3)-(5) are defaulted.  *Boerckel*, 526 U.S. at 845.

Petitioner argues that the prosecutors' statements, vouching for Palmer's credibility and referring to petitioner and others as "vicious criminals," violated his due process rights.   "The due process clause has been interpreted to forbid prosecutors to obtain jury verdicts by means of statements that are seriously misleading or that otherwise prevent the jury from deliberating rationally about the defendant's guilt."   *Hennon*, 109 F.3d at 332 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)) (further citations omitted). To make out a constitutional claim for prosecutorial misconduct, petitioner must show not only that the prosecutor engaged in misconduct, but that the misconduct resulted in a trial that was unfair.  *See, e.g.*, *Whitehead v. Cowan*, 263 F.3d 708, 728 (7th Cir. 2001).   In making the later determination, courts consider six factors set forth in *Darden*: "(1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the response; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut."  *Id.*

With regards to Palmer, the prosecutor stated in rebuttal closing argument

> What did Gilbert Palmer say?  Look who we are talking
> about, a Baptist minister.  Do you think a Baptist

> minister is going to come into court and lie?  What does he say?  He says he sees Dorothy being beaten and dragged to her car.  That is the key point. . . .  Mr. Palmer isn't lying and neither is the police officer.  The fact that he didn't tell the police officer something that day didn't mean it didn't happen.
>
> Think about this ladies and gentlemen, Gilbert Palmer is a religious minister, a religious man.  He's not a police officer.  He's just seen crime occur.  Don't you think that that shocked and surprised him?  It would shock and surprise anyone.  When he's talking to the police that day and they are interviewing him on the street, don't you think it's possible that he might have forgot to mention that besides the beating he saw her hit in the car, for instance?  Just because someone didn't tell it to the police that day doesn't mean it doesn't happen.  He's been shocked and surprised by the occurrence that he saw.

(Tr. at 439-30.)  These statements were made in response to the defense's closing argument, where defense counsel referred to Palmer as "the pastor" and argued that Palmer "not only . . . testif[ied] as to what he allegedly observed, but he also kind of like added things."  (Tr. at 425-26.)  The Illinois appellate court found that, by attacking Palmer's credibility, the defense invited the prosecutor's comments and that such comments did not vouch for the credibility of witness per se, but invited the jury to consider all circumstances before making credibility determinations. *Edwards*, 355 Ill.App.3d at 1096, 825 N.E.2d at 334.

Petitioner's second claim concerns the prosecutor's statement that "[t]his is a case where the public, based upon the evidence that you have heard here, is entitled to protection from vicious criminals like Duane Edwards."  (Tr. at 449.)  Although the

22

Illinois appellate court found the statement "problematic," it also found that this was an isolated comment and did "not constitute a pattern of intentional prosecutorial misconduct, which might have had a cumulative effect that created unfair prejudice to the defendant." *Id.*

The Illinois appellate court's findings are not contrary to or an unreasonable application of federal law. Although the Illinois appellate court did not cite *Darden* or other federal cases, it nonetheless determined whether the prosecutor's comments were improper and whether they affected petitioner's trial. The finding that the prosecutor's comments about Palmer's profession where made in response to the defense's closing argument is plainly sustained by the record. Moreover, the jury was also instructed by the trial court that the arguments of counsel were not evidence and that only the jury could determine the credibility of witnesses. (Tr. at 451-52.) In turn, the prosecutor's "vicious criminals like Duane Edwards" comment appears blatantly improper. However, the appellate court's determination that the comment was isolated and did not infect the entire proceeding is not unreasonable. The appellate court is correct that this was an isolated comment. No such comments were made in opening statements or at any other phase of the trial. Moreover, as I have already found, there is sufficient evidence to sustain petitioner's aggravated sexual assault conviction, which undermines his argument that the Illinois

appellate court's determination was unreasonable. Furthermore, petitioner was in fact acquitted of a number of charges in this case. Accordingly, petitioner is not entitled to relief.

E. Claims 5-6

Petitioner also raises several claims of ineffective assistance of counsel. He argues his trial attorney failed to (a) object to the underlying occurrences which are the subject of petitioner's claims 1-4; (b) file a post-trial motion to preserve the above issues for appeal; (c) invoke petitioner's right to a speedy trial; (d) challenge the essential elements of the aggravated criminal sexual assault. Petitioner also contends his appellate counsel was ineffective for not raising claims 1-5 on appeal.

Petitioner's claim that his trial and appellate counsel did not argue that the bodily harm was too remote in time to the sexual assault to prove aggravated criminal sexual assault and for failure to object to the prosecutor's comments during closing and rebuttal arguments are the only claims that have been through one full round of review. Petitioner does not establish cause or prejudice, or actual innocence. Accordingly, the remaining are defaulted.

With respect to the preserved claims, the Illinois appellate court found petitioner's trial attorney was not ineffective with respect to challenging the bodily harm element of the aggravated criminal sexual assault conviction. *Id.* at 1097-98, 825 N.E.2d at

24

335. The court identified and applied the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). The court noted trial counsel argued in a motion for directed verdict, to the jury in closing argument, and in a post-trial motion for a new trial that the evidence of bodily harm was insufficient. Petitioner's claim is thus unsupported by the record and the appellate court's decision is not contrary to or an unreasonable application of *Strickland*. Similarly, as described above, the Illinois appellate court found petitioner's prosecutorial misconduct claims without merit and that petitioner's trial and appellate counsel were not ineffective in not raising such claims. Because the court found that petitioner could not establish that the prosecutor's comments amounted to an unfair trial, it is not unreasonable for it to conclude that petitioner could not show prejudice under *Strickland*. Petitioner's claims of ineffective assistance of counsel are denied.

## F. Claim 7

Petitioner argues he was denied his due process right to a fair trial in light of the cumulative effect of his above asserted errors. Although petitioner raised this claim in his post-conviction petition, he did not raise it in his post-conviction appeal. This claim is thus procedurally defaulted and petitioner has not shown cause or prejudice or established actual innocence.

### G. Claim 8

Petitioner asserts that the trial court lacked jurisdiction in this case because there was no basis for his arrest; that the Illinois law allowing for the temporary questioning of persons without an arrest was enacted after his arrest and was not made retroactive. He also seems to argue that some of the sexual assaults occurred outside Joliet and that Joliet police officers thus did not have jurisdiction to investigate those offenses. None of these claims were ever raised in petitioner's appeals or post-conviction proceedings, however. Nor does petitioner allege cause or prejudice or has established actual innocence. Accordingly, these claims are procedurally defaulted.

### IV.

For the above reasons, I deny Edwards's petition for a writ of habeas corpus.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 25, 2007